FILED

2010 May-28  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-S-416-NE |
| | ) | |
| MENTAL HEALTH CENTER OF | ) | |
| NORTH CENTRAL ALABAMA., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Victoria Cain, asserts claims for discrimination on the basis of her race and sex under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, against defendant Mental Health Center of North Central Alabama, as well as claims for race discrimination and retaliation pursuant to the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, against the same defendant and two individual defendants, Linda Pierce and Heather Stone.  The case presently is before the court on two motions:  defendants' motion to dismiss plaintiff's amended complaint (doc. no. 19); and defendants' motion for summary judgment (doc. no. 37).  Upon consideration, and for the following reasons, the motion for summary judgment will be granted.  Consequently, the motion to dismiss will be

denied as moot.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[1]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure

---

[1] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS AND PROCEDURAL HISTORY

Plaintiff, Victoria Cain, is a black female who was employed by the Mental Health Center of North Central Alabama ("MHCNCA") from March 15, 2004, until September 12, 2006.[2]  MHCNCA is a public, nonprofit corporation that serves mentally-ill persons in and around Morgan, Limestone, and Lawrence Counties in north Alabama.[3]  Plaintiff began her employment as an Adult Case Manager at MHCNCA's Athens-Limestone Counseling Center ("Athens office").[4]  In that

---

[2] *See* doc. no. 39 (Evidentiary Submission in Support of Defendants' Motion for Summary Judgment), Ex. A (Deposition of Victoria Cain), at 82.

[3] *See id.*, Ex. D (Deposition of Peggy Carden), at 19-20.

[4] *See* Deposition of Victoria Cain, at 79-82.

capacity, she performed a variety of services to assist mentally-ill clients living in the community.[5]

Defendant Heather Stone began working for MHCNCA in May of 2001.[6]  After holding other positions in the organization, she was promoted to Program Director of the Athens office in January of 2005.[7]  Following her promotion, Ms. Stone became plaintiff's supervisor.[8]

Defendant Linda Pierce began working at MHCNCA in 1989.[9]  At all times relevant to this action, she worked as a case manager for the "ACT team," a group that works with treatment-resistant mentally-ill clients.[10]  The ACT team is comprised of a therapist, two case managers, two physicians, and a nurse.[11]  Ms. Pierce was never plaintiff's supervisor.[12]

A.     **Plaintiff's Allegations of Discriminatory Treatment in Athens**

As noted above, defendant Heather Stone became plaintiff's supervisor in January of 2005.[13]  At that time, plaintiff was upset about the number of clients

---

[5] *Id.* at 80-82.

[6] *See* doc. no. 39, Ex.E (Deposition of Heather Stone), at 15.

[7] *See id.* at 20, 39.

[8] *See id.* at 41.

[9] *See* doc. no. 39, Ex.F (Deposition of Linda Pierce), at 14-15.

[10] *See id.* at 50.

[11] *See id.*

[12] *See* Deposition of Victoria Cain, at 108, 354-55..

[13] *See* Deposition of Heather Stone, at 41.

4

assigned to her caseload.[14]  Caseloads at MHCNCA vary greatly, depending on the character of the population served by a case manager.[15]  Child clients, for example, require more attention and work and, accordingly, demand a smaller caseload.[16]  Other factors, such as the length of the case manager's employment, whether the case manager has given notice of impending resignation, and whether an employee has recently transferred to an office, also may affect a case manager's caseload.[17]

When plaintiff first began working at the Athens office of MHCNCA in March of 2004, she took over a previous case manager's caseload.[18]  Plaintiff's caseload included some clients who lived in a residential home, and whose needs were primarily met by other staff.[19]  Even so, plaintiff claims that the number of clients in her caseload was up to twice as many as that of a white case manager, Eleanor Maynor.[20]  Unlike plaintiff, however, Ms. Maynor did not inherit a caseload from another case manager.[21]  Instead, Ms. Maynor's caseload grew gradually after she transferred to the Athens office in August of 2005.[22]  Plaintiff also claims that her

---

[14] *See* Deposition of Victoria Cain, at 27-28.

[15] *See id.* at 175-177;

[16] *See id.* at 176.

[17] *See* doc. no. 39, Ex.H (Declaration of Heather Stone), ¶ 6.

[18] *See* Deposition of Victoria Cain, at 175-76.

[19] *See id.* at 173-174; Declaration of Heather Stone, ¶¶ 9-10.

[20] *See* Deposition of Victoria Cain, at 174-75.

[21] *See* Declaration of Heather Stone, ¶ 7.

[22] *See id.*

caseload was larger than that of another white case manager, Cathy Cox.[23]  Unlike plaintiff's caseload, however, half of Ms. Cox's caseload was composed of child clients.[24]

Plaintiff also claims that, on occasion, when the van driver was absent, she was asked to drive the van more often than other employees — about five or six times over the course of fourteen months.[25]  Plaintiff estimates that Christy Sloan, a white employee in the Athens office, only drove the van once or twice.[26]  Plaintiff also claims that she had to complete paperwork that had been assigned to Ms. Sloan while plaintiff was out for a surgery.[27]

Plaintiff alleges that she was required to perform after-hours work more often than other employees.[28]  Whenever plaintiff performed extra work, she could either arrive late or leave early another day that week, or receive payment for overtime hours.[29]  While working at the Athens office, plaintiff volunteered to clean the offices to earn extra money.[30]  Plaintiff was paid for overtime hours if she worked over forty

---

[23] *See* doc. no. 42, at 5-6.

[24] *See* Deposition of Heather Stone, at 64-65.

[25] *See* Deposition of Victoria Cain, at 199-201, 256.

[26] *See id.*

[27] *See id.* at 162-63.

[28] *See id.* at 203-05.

[29] *See id.* at 205.

[30] *See id.* at 109.

hours a week, even if the additional work was cleaning.[31]

Plaintiff also complains that she was treated differently from white employees with regard to refusing undesirable work assignments. Specifically, on December 15, 2005, one of plaintiff's former clients, who had been assigned to plaintiff until December 13, 2005, when the client was transferred to the Moulton Group Home, needed transportation from the Moulton Group Home to Athens, Alabama for a court hearing.[32]  According to plaintiff, the client was a "whirlwind" who, because of her illness, could be quick to anger, had thrown things, had a criminal record (including a recent charge of domestic violence), and had tried to commit suicide.[33]  However, plaintiff had conducted home meetings with the client without incident.[34]  In light of plaintiff's established history with the client, Heather Stone instructed plaintiff to transport the client.[35]  Plaintiff claims that she did not want to transport the client because it was inconvenient for her childcare arrangements, and because she did not feel comfortable with the client.[36]  Plaintiff claims that Ms. Stone allowed two other employees to refuse to transport the client to court, but she allegedly ordered plaintiff

---

[31] *See* Deposition of Victoria Cain, at 109-110.

[32] *See id.* at 179-181, 191-198.

[33] *See id.* at 178-79, 183, 191-92, 195.

[34] *See id.* at 178.

[35] *See* Deposition of Heather Stone, at 76.

[36] *See* Deposition of Victoria Cain, at 181-82.

7

to transport the client if she wished to keep her job.[37]

Plaintiff took the client to court without incident, but on the way back from court, the client allegedly called plaintiff a "bitch" or "black nigger," pulled a sharp object out of her boot, and after plaintiff pulled over, exited the car, chased plaintiff, and kicked the car door.[38]   MHCNCA paid $420 to repair the damage to plaintiff's car door.[39]

**B.   Plaintiff's Allegations of Discriminatory Treatment in Decatur**

At plaintiff's request, Peggy Carden, the Human Resources Manager for MHCNCA, agreed on March 13, 2006 to transfer plaintiff to the Decatur office to work as a case manager.[40]  Plaintiff alleges that, prior to leaving the Athens office, she trained a male replacement who earned more money than she did.[41]

After plaintiff's transfer, plaintiff alleges that she was asked to do paperwork for another employee, Ashley Jones, on one occasion.[42]   Ms. Jones, a white case manager for MHCNCA, worked at the Decatur office.[43]   Shortly after plaintiff transferred to the Decatur office, however, Ms. Jones transferred to the Athens

---

[37] *See id.* at180-82.

[38] *See id.* at 185-190, 232-33.

[39] *See id.* at 188.

[40] *See id.* at 320; doc. no. 39, Ex. G (Declaration of Peggy Carden), ¶ 6.

[41] *See* doc. no. 18 (Amended Complaint), ¶18.

[42] *See* Deposition of Victoria Cain, at 265-266.

[43] *See id.* at 99.

8

office.[44]  Because Ms. Jones had not completed some paperwork, plaintiff was asked

to go to Athens to complete the work.[45]  Plaintiff was paid for her mileage to do so,

and completed the work in the course of a regular workday.[46]

## C.   Complaints Regarding Plaintiff's Work Performance

As early as the summer of 2005, defendant Heather Stone alleges that she

noticed an above-average number of complaints from clients and therapists about

plaintiff's allegedly rude behavior.[47]  Upon recognizing this pattern, Ms. Stone

documented verbal warnings related to complaints about plaintiff on MHCNCA's

Supervision Notes.[48]  Although plaintiff disagrees with the substance of some of these

complaints, she offers no evidence that the complaints were not actually made.[49]

Following plaintiff's transfer to the Decatur office, the Moulton Program

Director reported to Scott Kincaid, the Program Director in the Decatur office, that

plaintiff had called a Moulton case manager to inquire how that office handled route

configuration and mileage reimbursement, and that plaintiff had insinuated that she

believed a co-worker was inflating her claims for travel reimbursements.[50]  Mr.

---

[44] *See id.* at 100.

[45] *See id.* at 265-66.

[46] *See id.* at 266.

[47] *See* Deposition of Heather Stone, at 62-64.

[48] *See id.* at 32.

[49] *See* Deposition of Victoria Cain, at 139-144, 151-153.

[50] *See* Deposition of Peggy Carden, at 67-68; Declaration of Lisa Coleman, ¶¶ 4-5.

Kincaid and Lisa Coleman, the Clinical Director for MHCNCA, counseled plaintiff in August of 2006 that she was not an investigator, and that she should not start rumors about co-workers.[51]

On or about September 6, 2006, Linda Pierce and Scott Kincaid, the Program Director in the Decatur office, received a report from a client's caretaker that plaintiff had asked the caretaker to complain about the client's reassignment to another case manager, defendant Linda Pierce, and to ask MHCNCA to use plaintiff as the client's case manager instead of Ms. Pierce.[52]  The caretaker allegedly reported to Mr. Kincaid that she felt uncomfortable, coerced, and as if she had been placed "in the middle of something."[53]

## D.    Plaintiff's Termination and Subsequent Events

Peggy Carden, MHCNCA's Human Resources Manager, Lisa Coleman, the Clinical Director, and Marie Hood, met to discuss the September 6, 2006 report lodged by a client's caretaker.[54]  Based upon the allegations of the caretaker, and in light of plaintiff's record of complaints from other clients and therapists, they decided to terminate plaintiff's employment on September 12, 2006.[55]  The termination letter

---

[51]*See* Deposition of Peggy Carden, at 68; Declaration of Lisa Coleman, ¶¶ 6-9.

[52] *See* Deposition of Peggy Carden, at 63, 66; Declaration of Lisa Coleman, ¶ 10.

[53] *See* Deposition of Peggy Carden, at 63-64.

[54] *See id.* at 66.

[55] *See id.* at 66-70.

communicated to plaintiff that she was terminated after "several complaints bordering on abuse and neglect of clients/constituents."[56]  Plaintiff does not know the identity, sex, or race of the person who replaced her at the Decatur office following her termination.[57]

Plaintiff alleges that her termination was "unfair, that it's about friendship and not professionalism," and that it resulted from a "relationship" between Ms. Jones and Mr. Kincaid, and Mr. Kincaid's interaction with Ms. Stone at directors' meetings.[58] In her deposition, plaintiff testified that she felt employment at MHCNCA was influenced by friendships rather than by adherence to policies.[59]  On a job application for Huntsville Hospital, plaintiff stated that "I reported co-worker, [Ashley Jones], and her boyfriend [Scott Kincaid] was promoted to my supervisor.  He made false statements about my job performance and I was asked to resign but I refused."[60]  In her deposition, plaintiff affirmed that she believes that was the reason for her termination.[61]

Plaintiff alleges that, after her termination, defendants gave prospective

---

[56] *See* doc. no. 39, Ex. C (Exhibits to Deposition of Victoria Cain), Ex. 28 (Letter of Termination); Deposition of Victoria Cain, at 330-331, 339-43).

[57] *See* Declaration of Victoria Cain, at 352-54.

[58] Deposition of Victoria Cain, at 337-338.

[59] *See* Deposition of Victoria Cain, at 326, 370.

[60] *See id.* at 286-287.

[61] *See id.* at 287.

employers, including the Huntsville City School system and the Alabama Department of Human Resources, negative references in retaliation for her filing of an EEOC complaint.[62]   However, plaintiff applied for a position with Huntsville City Schools on January 5, 2007, more three months before plaintiff filed an EEOC charge.[63]

Plaintiff began working for her current employer, Team One, in February of 2008.[64]   Sometime after she began working at Team One, plaintiff sought a position with the Alabama Department of Human Resources.[65]   Plaintiff concluded that, because the Department of Human Resources asked her about her employment at MHCNCA, they must have contacted MHCNCA, even though she admitted that employers routinely inquire about previous employment.[66]   Plaintiff testified that she had no other evidence that MHCNCA ever gave a negative reference to the Department of Human Resources.[67]

Plaintiff's attorney wrote a letter to the Equal Employment Opportunity Commission ("EEOC") on March 9, 2007, supplying information for the filing of a

---

[62] See doc. no. 18 (Amended Complaint).

[63] *See* Deposition of Victoria Cain, at 278, 357; doc. no. 39, Ex. C (Exhibits to the Deposition of Victoria Cain), Ex. 23.

[64] *See* Deposition of Victoria Cain, at 267-68.

[65] *See id.* at 357-60.

[66] *See id.* at 357-61.

[67] *See id.* at 359.

charge on behalf of his client.[68]  Plaintiff did not sign an actual charge until April 6, 2007.[69]  On or about December 3, 2008, the EEOC issued a "no cause finding" and a notice of plaintiff's right to sue.[70]  Plaintiff filed this lawsuit on March 2, 2009, alleging violations of Title VII and 42 U.S.C. § 1981.[71]

On March 30, 20009, defendants moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e).[72]  On October 14, 2009, the court granted defendants' motion for a more definite statement, and ordered plaintiff to file an amended complaint.[73]  Plaintiff filed her First Amended Complaint on October 27, 2009.[74]

### III.  DISCUSSION

In her amended complaint, plaintiff alleges that defendant Mental Health Center of North Central Alabama ("MHCNCA") discriminated against her on the basis of her *race* and *sex* in violation of her rights under Title VII of the Civil Rights Act of 1964,

---

[68] *See* doc. no. 8 (Defendant's Motion to Dismiss), Ex. A (Letter).

[69] *See id.*, Ex. B (Executed Charge).

[70] See doc. no. 18, ¶11.

[71] *See* doc. no. 1.

[72] Doc. no. 8.

[73] *See* doc. no. 17.

[74] Doc. no. 18.

as amended. *See* 42 U.S.C. § 2000e–2(a)(1).[75]  Plaintiff's complaint also states claims under 42 U.S.C. § 1981 for race discrimination and retaliation.  She alleges that defendants violated her rights under section 1981 by making false and negative statements about her to prospective employers because she filed a claim with the EEOC.

## A.    Sex discrimination

Defendants argue that plaintiff's claim of sex discrimination is due to be dismissed because the claim has not been administratively exhausted as required by 42 U.S.C. § 2000e-5(e)(1).[76]  In her brief in opposition to summary judgment, plaintiff failed to respond to this contention, or offer any evidence or legal authority whatsoever to support her sex discrimination claim.  Issues and contentions not raised in a party's brief are deemed abandoned.  As the Supreme Court stated in *Greenlaw*

---

[75] The full text of this keystone provision of the Civil Rights Act of 1964 reads as follows:

It shall be an unlawful employment practice for an employer—
  **(1)**  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
  **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

[76] *See* doc. no. 38, at 29-30.

*v. United States*, 554 U.S. 237, 128 S. Ct. 2559 (2008),

> [i]n our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.

*Id.* at — , 128 S. Ct. at 2564. *See also*, *e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some

citations omitted).[77] Because plaintiff has abandoned her sex discrimination claim, the

claim is due to be dismissed.

Even if plaintiff had responded to defendants' contentions, however, the court

would still dismiss the sex discrimination claim because, as defendants allege, the

claim was not administratively exhausted.   A plaintiff must satisfy a number of

administrative prerequisites before filing a suit based upon Title VII.  Foremost among

these is the requirement that a charge of discrimination be submitted to the Equal

Employment Opportunity Commission within 180 days "after the alleged unlawful

employment practice occurred." 42 U.S.C. § 2000e-5(e)(1);  *see also, e.g., Alexander

v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a

violation of Title VII may be brought unless the alleged discrimination has been made

the subject of a timely-filed EEOC charge."); *Stafford v. Muscogee County Board of

Education*, 688 F.2d 1383, 1387 (11th Cir. 1982) ("In order to assert a claim of racial

---

[77] *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Insurance Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to address issue for failure of party to argue it in its brief on appeal).

discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred.").

The only sex-specific claim that plaintiff asserts in her complaint is that she trained a male replacement for the Athens office who was paid more than she was immediately prior to her March 2006 transfer to the Decatur office.[78]  Any complaint related to the transfer or replacement must have been made the subject of an EEOC charge within 180 days of those events.  The allegation about her male replacement in the Athens office was never raised in any charge filed with the EEOC.  Accordingly, plaintiff's complaint of sex discrimination under Title VII is due to be dismissed.

## B.    Race Discrimination

Plaintiff asserts claims for race discrimination under both Title VII and 42 U.S.C. § 1981.  Section 1981 has been described as "a parallel remedy against [racial] discrimination which . . . derive[s] its legal principles from Title VII."  *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300, 1315 n.27 (5th Cir. 1980) (quoting *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979)).[79]  In other words, because "[b]oth of these statutes have the same requirements of proof and use the same analytical

---

[78] *See* doc. no. 18, ¶ 18.

[79] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

framework, . . . [federal courts] explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *see also*, *e.g.*, *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980) ("When section 1981 is used as a parallel basis for relief with Title VII against disparate treatment in employment, its elements appear to be identical to those of section 706 [of Title VII, *i.e.*, 42 U.S.C. § 2000e-5].") (citations omitted).

Because plaintiff is relying on circumstantial evidence to prove her race discrimination claims, the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, plaintiff must first demonstrate a *prima facie* case, thereby creating a presumption of discrimination. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If plaintiff satisfies her initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt Group Inc.*, 509 F.3d 1344, 1347 (11th Cir.

18

2007) (citation omitted).

To establish a *prima facie* case of race discrimination, plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) the employer treated similarly situated employees outside of the protected class more favorably; and (4) plaintiff was qualified to do the job. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)); *see also*, *e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

An adverse action must represent "a serious and material change in the terms, conditions, or privileges of employment" and have a tangible adverse effect on the plaintiff's employment. *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The alleged adverse employment action must be one that would be judged materially adverse to a reasonable person under the same circumstances. *Davis*, 245 F.3d at 1239-40.

Plaintiff belongs to a protected class and the court finds that she was generally qualified for the job. Plaintiff's allegations, however, fail to satisfy the requirements of identifying an adverse action and showing that similarly-situated employees outside of her protected class received more favorable treatment.

19

Although plaintiff's complaint includes allegations of disparate pay and discriminatory discharge, in addition to her claims of discriminatory treatment with regard to work assignments, plaintiff's brief in opposition to defendants' motion for summary judgment abandons the majority of these claims.   Plaintiff's response discusses only two complaints of discriminatory treatment.   First, she alleges that her caseload was larger than the caseloads of two white case managers, Cathy Cox and Eleanor Maynor.[80]   Next, plaintiff claims that defendants discriminated against her by asking her to transport a dangerous client, while allowing white case managers to refuse the task.[81]   All other allegations of discriminatory treatment raised in plaintiff's complaint, but not discussed in plaintiff's response in opposition to summary judgment, are deemed abandoned for the reasons discussed in Part III(A) of this opinion, *supra*.  *See, e.g., Chapman*, 229 F.3d at 1027.

### 1.    Larger caseload

Plaintiff does not complain that her workload was "too much," but that it was larger than those of her white contemporaries.[82]   Generally speaking, courts view discriminatory work assignment claims cautiously.  *Davis*, 245 F.3d at 1244 ("Work assignment claims strike at the very heart of an employer's business judgment and

---

[80] *See* doc. no. 42, at 5-6.

[81] *See id.* at 6-7.

[82] *Id.* at 6.

expertise because they challenge an employer's ability to allocate its assets."). Increased workloads are not adverse employment actions, but "an ordinary tribulation of the workplace." *McGuire v. Miami-Dade County*, 418 F. Supp. 2d 1354, 1360 (S.D. Fla. 2006) (quoting *MacLean v. City of St. Petersburg*, 194 F. Supp. 2d 1290, 1299 (M.D. Fla. 2002)). Plaintiff has failed to prove that her caseload constituted an adverse employment action.

Plaintiff also has not shown that defendants treated similarly situated employees outside her class more favorably. Plaintiff claims that her caseload was larger than the caseloads of two white case managers, Cathy Cox and Eleanor Maynor. However, neither Ms. Cox nor Ms. Maynor is similarly situated to plaintiff. Plaintiff admits that in general, caseloads for case managers at MHCNCA vary greatly depending on the clients and the case manager.[83] She admits that child clients require more attention and work and, accordingly, demand a smaller caseload.[84] Given these factors, plaintiff, who worked solely with adults, cannot compare her caseload to that of Ms. Cox, whose caseload consisted of half adults and half children.[85]

Plaintiff claims that she was assigned twice as many clients as Ms. Maynor. Again, however, plaintiff conceded that the number of clients on her caseload was

---

[83] *See* Deposition of Victoria Cain, at 175-77.

[84] *See id.* at 176.

[85] *See* Deposition of Heather Stone, at 64-65.

21

greater than Ms. Maynor's, primarily because many of plaintiff's clients were residents of a group home and, therefore, required less work and attention.[86]  Plaintiff also does not dispute that she was hired to take on a pre-existing caseload, while Ms. Maynor was added to the Athens staff in August of 2005 without a full adult caseload and with the intent that her caseload would increase over time.[87]  Accordingly, Ms. Maynor was not similarly situated to plaintiff and, like Ms. Cox, is not an appropriate comparator.

Because plaintiff has not shown that the number of clients assigned to her caseload constituted an adverse employment action, and has not provided evidence that defendants treated similarly situated employees outside her class more favorably, plaintiff's race discrimination claim with regard to her caseload lacks merit.

### 2.    Transporting a dangerous client

Plaintiff claims discriminatory treatment with regard to a specific incident in which defendant Heather Stone allegedly ordered plaintiff to transport a client to court, but allowed two other employees to refuse to transport the same client.[88]  The client at issue had been assigned to plaintiff until December 13, 2005, when the client was transferred to the Moulton Group Home.[89]  On December 14, 2005, Ms. Stone

---

[86] *See* Deposition of Victoria Cain, at 173-4.

[87] *See* Declaration of Heather Stone, ¶ 7.

[88] *See* Deposition of Victoria Cain. at180-82..

[89] *See id.* at 179-181, 191-198.

asked plaintiff to transport the client from the Moulton Home to Athens, Alabama for a court hearing at 8:30 a.m. on the following day.[90]  Although the client had a history of behavioral problems because of her mental illness, plaintiff had conducted home meetings with the client without incident.[91]  In light of plaintiff's established history with the client, Ms. Stone instructed plaintiff to transport the client.[92]  Plaintiff claims that she did not want to transport the client because it was inconvenient for her childcare arrangements, and because she did not feel comfortable with the client.[93]

Plaintiff cannot establish that this work assignment rose to the level of an adverse action.  Only in "unusual circumstances" is a work assignment so substantial and material that it alters the terms and conditions of employment.  *Davis*, 245 F.3d at 1244-45.  Plaintiff's job required regular interaction with and performing services for mentally ill persons.  Therefore, the assignment of transporting a client to court does not constitute an adverse action.  Furthermore, plaintiff was in a unique position in light of her established history with the client and, therefore, cannot prove that other employees were similarly situated.

Upon consideration, the court finds that neither of the two allegations discussed

---

[90] *See id.*

[91] *See id.* at 178.

[92] *See* Deposition of Heather Stone, at 76.

[93] *See* Deposition of Victoria Cain, at 181-82.

23

in plaintiff's response in opposition to summary judgment rise to the level of an adverse employment action, and that plaintiff has failed in satisfying the requirement of showing that similarly situated employees outside of her protected class received more favorable treatment. Therefore, plaintiff cannot establish a *prima facie* case and her race discrimination claims will be dismissed.

## C.    Retaliation

Plaintiff fails to address the retaliation claim in her response to defendant's motion for summary judgment. Therefore, for the reasons that have previously been discussed, the court will consider that claim abandoned. Even if plaintiff had addressed the retaliation claim, however, the court would still dismiss it.

To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that she engaged in statutorily protected activity, she suffered a materially adverse employment action, and there was some causal relation between the two events. *See, e.g., Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Plaintiff cannot establish a *prima facie* case of retaliation, because she provides no evidence that negative references were ever given to prospective employers by any of the defendants. In plaintiff's complaint, she claims that defendants gave prospective employers, including the Huntsville City School system and the Alabama

24

Department of Human Resources, negative references in retaliation for her filing an EEOC Complaint.[94]  However, plaintiff applied for a position with Huntsville City Schools on January 5, 2007, two months before plaintiff's attorney first contacted the EEOC.[95]  Therefore, any reference given by MHCNCA to the Huntsville City Schools could not have been in retaliation for an EEOC charge.  With regard to the Department of Human Resources, plaintiff testified that, aside from her observation that she was asked questions about MHCNCA in her interview, she has no evidence that MHCNCA gave a negative reference to the Department of Human Resources.[96]  Plaintiff's retaliation claim is entirely devoid of factual support, and therefore also will be dismissed.

## IV.  CONCLUSION AND ORDER

For all of the foregoing reasons, defendants' motion for summary judgment is due to be, and it hereby is, GRANTED, and all of plaintiff's claims are DISMISSED with prejudice.  Defendant's motion to dismiss is DENIED as moot.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 28th day of May, 2010.

---

[94] *See* doc. no. 18, ¶ 21.

[95] *See* Deposition of Victoria Cain, at 278, 357; doc. no. 39, Ex. C (Exhibits to the Deposition of Victoria Cain), Ex. 23.

[96] *See* Deposition of Victoria Cain, at 359.

United States District Judge